411 S.E.2d 461

**N. Joe RAHALL, Plaintiff
Below, Appellant,**

v.

**Nicholas TWEEL, Defendant
Below, Appellee.**

No. 20102.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 2, 1991.

Decided Nov. 1, 1991.

Joseph M. Farrell, Jr., Hunt & Wilson, Huntington, for appellant.

Nicholas Tweel, pro se.

MILLER, Chief Justice:

N. Joe Rahall, the plaintiff below, appeals from a final order of the Circuit Court of Kanawha County, dated August 13, 1990, denying his motion to set aside a jury verdict. On appeal, the plaintiff contends that the trial court erroneously instructed the jury that a party who signs a promissory note, but receives no direct benefit by signing it, is an accommodation party, and, as such, is not liable to the principal on the note. We agree that the instruction was erroneous; accordingly, we reverse and remand the case for further proceedings consistent with this opinion.

## I.

In 1984, the plaintiff and Nicholas Tweel, the defendant below, obtained two unsecured loans totaling $80,000 from the Charleston National Bank (the Bank). The loan was procured to keep a hotel in Huntington operational. Both parties testified that it was to their benefit that the hotel remain open.

Both notes were prepared by the Bank. The front of each note stated the value received, the date the note was signed, its due date, and the annual interest. There were two signature lines, where each party signed, and beneath each line was the printed phrase "Signature of Maker." The back of the notes contained covenants and conditions, language involving endorsers, and two lines for signatures. The phrase "Endorser's Signature" was printed under each of the lines on the back of the notes, both of which were blank.

When the notes became due, the plaintiff paid the Bank the total amount owed, and then filed suit against the defendant to collect one-half of this amount. At trial, the defendant claimed that because he had not directly received the proceeds from the two loans, he was merely an accommodation party. The trial court agreed and, over the plaintiff's objection, instructed the jury that an accommodation party is not liable to the principal, i.e., the person accommodated, unless he received a direct benefit.[1] By way of a special interrogatory, the jury found that Mr. Tweel received no direct benefit from signing the promissory notes; therefore, he was not liable to the plaintiff.

## II.

Our inquiry is to determine Mr. Tweel's status on the two notes. Ordinarily, a party's status or capacity on commercial paper is determined solely from the face of the instrument. Under W.Va.Code, 46-3-402 (1963), if there is ambiguity about the party's status or capacity, the party is deemed an endorser.[2] We adopted this principle in Syllabus Point 1 of *First National Bank v. Linn*, 168 W.Va. 76, 282 S.E.2d 52 (1981): "Under the Uniform Commercial Code, W.Va.Code, 46-3-402, unless the instrument clearly indicates that a signature is made in some other capacity, it is an indorsement."

---

1. Defendant's Instruction No. 3 provided:

   "The Court further instructs the jury that the fact that a party signs an instrument, such as a promissory note, but does not receive any direct remuneration or consideration for signing establishes that party as an accommodation party under the West Virginia Uniform Commercial Code, and, an accommodation party is not liable to the principal, or person who receives the benefit arising under the instrument.

   "Accordingly, if you find that Nicholas J. Tweel signed the promissory notes involved herein, but did not receive any direct remuneration or consideration for signing those notes, then he is an accommodation party; as such, he is not liable to Nick Joe Rahall, the principal on those notes, and your verdict may be, 'We, the jury, agree and find for the defendant, Nicholas J. Tweel.'"

2. W.Va.Code, 46-3-402, provides: "Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement."

The official comment[3] to W.Va.Code, 46–3–402, elaborates on the reason for this rule, which is designed to discourage the use of parol evidence in determining a party's status or capacity:

"The question is to be determined from the face of the instrument alone, and unless the instrument itself makes it clear that he has signed in some other capacity the signer must be treated as an indorser.

"The indication that the signature is made in another capacity must be clear without reference to anything but the instrument.... [Capacity] may be found in usage or custom. Thus, by long established practice judicially noticed or otherwise established a signature in the lower right hand corner of an instrument indicates an intent to sign as the maker of a note or the drawer of a draft."[4]

On the face of the two notes in question, it is clear that the defendant signed as a co-maker. This was the capacity identified under his signature. Moreover, his signature appeared on the front of the note in the lower right hand corner, which, as the official comment to W.Va.Code, 46–3–402, states, is judicially noted as an intent to sign as a maker.

■ We explained the obligations of co-makers in Syllabus Points 2 and 3 of *Estate of Bayliss v. Lee,* 173 W.Va. 299, 315 S.E.2d 406 (1984):

"2. 'Under our law, co-obligors on a note are jointly and severally liable. If one co-obligor is required to pay the en- tire obligation, he may seek contribution or reimbursement from his co-obligor for fifty per centum of the amount paid.' Syllabus Point 4, *Newton v. Dailey,* [167 W.Va. 347], 280 S.E.2d 91 (1981).

"3. The rule of equal or *pro tanto* contribution is not absolute if it can be shown that the co-obligors have by agreement made a different allocation as to their liability *inter se* or one or more of the co-obligors have received a dispro- portionate benefit from the transaction, then disproportionate contribution may be allowed."

■ Having found Mr. Tweel to be a maker on the two notes, we must now decide whether he was only an accommoda- tion maker. Under W.Va.Code, 46–3–415(5) (1963), an "accommodation party is not liable to the person accommodated."[5] Thus, where the person accommodated, in this case Mr. Rahall, pays the entire amount owed on a promissory note, he cannot then recover from the defendant. Obviously, the defendant's contention that he was an accommodation party, if true, would relieve him of any obligation to reim- burse the plaintiff.

■ In Syllabus Point 6 of *Peoples Bank of Point Pleasant v. Pied Piper Retreat, Inc.,* 158 W.Va. 170, 209 S.E.2d 573 (1974), we defined an accommodation party:

"An accommodation party is one who signs an instrument in any capacity for the purpose of lending his name to anoth- er party to the instrument."

*United States,* 408 F.2d 1075, 1084 (8th Cir. 1969)."

---

**3.** In note 4 of *First National Bank,* 168 W.Va. at 79, 282 S.E.2d at 54, we recognized the author- itative nature of the official comment to our Uniform Commercial Code:

"The official comment to our Code provi- sions involving the Uniform Commercial Code are taken verbatim from the Official Comments contained in the original Uniform Commercial Code and represent textual state- ments of the drafters of the Code and are recognized by courts and commentators as an official source document for interpretation of the Code provisions. *E.g., United States v. First National Bank,* 470 F.2d 944, 947 (8th Cir.1973); *In re Varney Woods Prods. Inc.,* 458 F.2d 435, 437 (4th Cir.1972); *Thompson v.*

**4.** *See, e.g., Seronick v. Levy,* 26 Mass.App.Ct. 367, 527 N.E.2d 746, *review denied,* 403 Mass. 1104, 530 N.E.2d 797 (1988); *North Fork Bank & Trust Co. v. Holbrook,* 89 A.D.2d 599, 452 N.Y.S.2d 645 (1982); *Grimes v. Grimes,* 47 N℃.App. 353, 267 S.E.2d 372 (1980). *Cf. United Bank & Trust Co. v. Schaeffer,* 280 Md. 10, 370 A.2d 1138 (1977) (plain language on back of note indicated that the party signed as an ac- commodation maker).

**5.** The entire text of W.Va.Code, 46–3–415, is found in note 8, *infra.*

*See also* W.Va.Code, 46–3–415(1).[6]

■ The clearest example of this type of endorsement is where a creditor refuses to lend money to a debtor unless the debtor has someone co-sign the instrument as additional security on the debtor's obligation.[7] The holding in *Peoples Bank* is derived from W.Va.Code, 46–3–415, which outlines the general rules regarding accommodation parties and their rights and obligations.[8] Under W.Va.Code, 46–3–415(3), oral proof that a person is an accommodation party is not admissible against a holder in due course without notice of the accommodation. However, the accommodation status of a party may be established by oral proof against the party accommodated, holders not in due course, or any party with notice of the accommodation. Because the defendant was not a holder in due course, parol evidence was admissible to prove his accommodation status.

■ In determining whether a person signed a note merely to lend his name to another party on it, courts have considered several factors. These include the party's purpose in signing the note, the intent of the other parties, whether the party took part in the negotiations leading to the financing, the purpose of the loan, whether the accommodation party received any benefit from the transaction, and whether the

party's signature was necessary to secure the loan. *See, e.g., Lasky v. Berger,* 536 P.2d 1157 (Colo.App.1975); *Farmers State Bank v. Cooper,* 227 Kan. 547, 608 P.2d 929 (1980); *EL–CE Storms Trust v. Svetahor,* 223 Mont. 113, 724 P.2d 704 (1986); *Kerney v. Kerney,* 120 R.I. 209, 386 A.2d 1100 (1978); *Mooney v. GR & Assocs.,* 746 P.2d 1174 (Utah App.1987). *See generally* Annot., 90 A.L.R.3d 342 (1979 & Supp. 1991). Finally, the party asserting that he is accommodation maker has the burden of proof. *E.g., Riegler v. Riegler,* 244 Ark. 483, 426 S.W.2d 789 (1968); *MacArthur v. Cannon,* 4 Conn.Cir. 208, 229 A.2d 372, *cert. denied,* 154 Conn. 748, 227 A.2d 562 (1967); *Utah Farm Prod. Credit Ass'n v. Watts,* 737 P.2d 154 (Utah 1987); *Narans, SDKD, Ltd. v. Paulsen,* 803 P.2d 358 (Wyo.1990).

■ Nor is it necessary that a party receive a direct benefit from a loan in order to be an accommodation party. If a party signs as a co-maker and his business interest benefits, this benefit may preclude him from alleging accommodation status. *E.g., Lasky v. Berger, supra; Mooney v. GR & Associates, supra.* As the Utah Supreme Court explained in *Utah Farm Production Credit Association v. Watts,* 737 P.2d at 159, the receipt of benefits is only one factor: "[W]e believe a more accurate

---

**6.** For the text of W.Va.Code, 46–3–415(1), see note 8, *infra.*

**7.** The official comment to W.Va.Code, 46–3–415, makes it clear that "an accommodation party is always a surety[.]" Suretyship is discussed in 1 J. White & R. Summers, *Uniform Commercial Code* § 13–13 at 655–56 (3d ed. 1988):

"Structurally, suretyship is a three party relationship involving the creditor, the principal debtor and the surety. The debtor's obligation as a purchaser of goods or borrower of money is already familiar. So, too, his obligation as a signer of a negotiable instrument. The surety's obligation is somewhat different. In effect the surety undertakes to 'back up' the performance of the debtor and he thereby gives the creditor the added assurance of having another party to the obligation." (Footnotes omitted).

The authors further explained that an accommodation party may assert the defenses available to a surety. *See* 1 J. White & R. Summers, *supra* at 658.

**8.** W.Va.Code, 46–3–415, provides:

"(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

"(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.

"(3) As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof.

"(4) An indorsement which shows that it is not in the chain of title is notice of its accommodation character.

"(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

statement of the law is that whether or not a party to an instrument receives a benefit directly or indirectly, and if so to what extent, is one of several factors to be considered in determining the parties' intent."

 In the present case, the trial court erred in giving Defendant's Instruction No. 3, which restricted the jury's consideration of an accommodation party solely to whether the defendant received any direct remuneration for signing the instrument. This error was compounded when the jury was asked in a Special Interrogatory whether the defendant "receive[d] any direct benefit by virtue of signing the promissory notes to the Charleston National Bank." Because Defendant's Instruction No. 3 and the accompanying special interrogatory focused exclusively on this one factor, the test for ascertaining whether the defendant was an accommodation party was too constricted. The jury was not instructed to consider the intention of the parties, the purpose of the loan, or whether the Bank would have given the plaintiff the loans without the defendant's signature.

Our traditional rule regarding the effect of an erroneous instruction is contained in Syllabus Point 5 of *Yates v. Mancari*, 153 W.Va. 350, 168 S.E.2d 746 (1969):

> " 'An erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not prejudiced by such instruction.' Point 2, syllabus, *Hollen v. Linger*, 151 W.Va. 255 [151 S.E.2d 330 (1966) ]."

*See also Pino v. Szuch*, 185 W.Va. 476, 408 S.E.2d 55 (1991); *Rodgers v. Rodgers*, 184 W.Va. 82, 399 S.E.2d 664 (1990); *Birch v. Kelly*, 177 W.Va. 564, 355 S.E.2d 57 (1987); *Cunningham v. Martin*, 170 W.Va. 411, 294 S.E.2d 264 (1982); *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981).

We cannot conclude that the plaintiff was not prejudiced by the erroneous instruction. Had the jury been properly instructed, it might have reached a different result. For example, the Bank officer at trial unequivocally stated that the plaintiff was known as a person of considerable wealth and that his loan would have been approved without the defendant's signature. Furthermore, both parties testified that the loan proceeds were used to keep the hotel operating, which was to everyone's benefit. The plaintiff had an ownership interest in the hotel. The defendant had an option under which he would acquire an ownership interest in the hotel if he could arrange the necessary financing. Moreover, the defendant acknowledged that if the hotel were sold, he would receive a commission if he secured the buyer.

### III.

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.